IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DERRICK HOWARD,

                Plaintiff,                                OPINION and ORDER

     v.                                                     09-cv-75-slc

CAPTAIN HOLM, JEFF SUPRENAND,
J. KEYS and J. KITZMAN,

                Defendants.

---

In this civil action for monetary relief brought pursuant to 42 U.S.C. § 1983, plaintiff Derrick Howard contends that defendants Captain Holm, Jeff Suprenand, J. Keys and J. Kitzman violated his rights under the Eighth Amendment by exhibiting deliberate indifference to a serious risk that plaintiff would harm himself. Now before the court are the parties' cross motions for summary judgment. Dkt. 18 and 27. I am denying plaintiff's motion, and I am denying defendants' motion with respect to plaintiff's claims against defendants Keys, Kitzman and Suprenand. I am granting summary judgment in favor of defendant Holm.

From the parties' proposed findings of fact and the record, I find the following facts to be material and undisputed. I also include each parties' version of the facts in situations in which the parties dispute material facts:

UNDISPUTED FACTS

Plaintiff Derrick Howard is an inmate at the Waupun Correctional Institution in Waupun, Wisconsin. Defendants are employees at the Waupun Correctional Institution. Defendant Holm is a supervising officer 2, defendant Suprenand is a correctional sergeant and defendants Kitzman and Keys are correctional officers.

On September 19, 2008, at approximately 8:00 p.m., defendant Keys was making insulin rounds. When he arrived at plaintiff's cell, plaintiff told Keys that he was having psychological problems and bad thoughts, and asked Keys to tell the sergeant that plaintiff wanted to talk to him. (Plaintiff alleges that he also told Keys that he was feeling suicidal and wanted to see a mental health professional. Defendants deny this, alleging that plaintiff never told Keys he was having thoughts of self-harm or suicide.) Keys told plaintiff that he would tell the sergeant about the situation. Plaintiff tried to hand his medication to Keys, but Keys refused to take it, telling plaintiff to give the medication to the sergeant.

On the same night, September 19, defendant Suprenand was assigned as the south cell hall sergeant. At approximately 8:00 p.m., defendant Keys told Suprenand that plaintiff wanted to speak with Suprenand. Keys did not tell Suprenand that plaintiff was having thoughts of self-harm or suicide or that plaintiff had asked for psychological services staff.

At approximately 8:30 p.m., defendant Kitzman was passing out medication to the inmates in the south cell hall. When Kitzman arrived at plaintiff's cell, plaintiff told Kitzman that he was not doing well and wanted to go to segregation. Plaintiff asked if he could speak with a supervisor. (Plaintiff alleges that he also told Kitzman that he was feeling suicidal, that he had already told Keys and that nothing had been done. Defendants deny that plaintiff told Kitzman that he was feeling suicidal. Defendants allege that Kitzman asked plaintiff what he meant by "not doing well," and plaintiff said only that he "did not know," that he was "not feeling well" and wanted to go to segregation. Defendants allege that Kitzman told plaintiff that he had not provided enough information, but that Kitzman would tell the sergeant on duty that plaintiff was not feeling well.) Plaintiff did not ask Kitzman to take his medications.

2

(Defendants allege that Kitzman went back to plaintiff's cell approximately 15 minutes later to check on plaintiff and saw him laughing and playing cards.  Plaintiff disputes this, alleging that he was not laughing or playing cards on this day and that he has never played cards in prison because he is mentally incapable of playing cards.)

Kitzman told defendant Suprenand that plaintiff had asked to be moved and wanted to speak with a supervisor.  He did not tell Suprenand that plaintiff was having thoughts of self-harm or that plaintiff had asked for psychological services staff.  Suprenand told Kitzman that he knew plaintiff wanted to speak with him and that Suprenand would go to plaintiff's cell.

Suprenand told defendant Holm that plaintiff had asked to be moved.  Holm told Suprenand that he would talk to plaintiff the next morning about his request.  Suprenand did not tell Holm that plaintiff was having thoughts of self-harm or suicide or that plaintiff had asked to speak with psychological services staff.

At approximately 9:15 p.m., defendant Suprenand made his final rounds for the evening and stopped at plaintiff's cell.  (Plaintiff alleges that he told Suprenand that he was feeling suicidal, that two other officers knew of his suicidal state and that nothing had been done to help him.  Plaintiff alleges that he asked to speak to a captain so that he could get help.  Defendants dispute this, alleging that plaintiff did not tell Suprenand that he was having suicidal thoughts.  Defendants allege that plaintiff told Suprenand about an unspecified problem he was having and asked to be moved.)  Suprenand told plaintiff that he had already spoken to defendant Holm and that Holm would talk to plaintiff in the morning.  Plaintiff said something like "tell Captain Holm I'm not fucking around," and swallowed several pills.  Suprenand called the security office and plaintiff was taken to the hospital.

3

After plaintiff returned to prison, he was placed on observation status and placed in segregation for misuse of medication.

On September 20, 2008, Jeffrey Garbelman, a psychological associate at the Waupun Correctional Institution, saw plaintiff. Plaintiff told Garbelman that he was unaware that taking prescription medications could have a lethal outcome. Plaintiff denied any suicidal or homicidal intent. Garbelman noted that plaintiff's behavior on September 19 was an act of frustration, not a suicide attempt, and plaintiff had expected that his actions would result in a cell transfer. Also, Garbelman noted that plaintiff appeared oriented and displayed no evidence of a thought, speech or cognitive disorder. Garbelman noted that plaintiff's behavior indicated that plaintiff wanted to "get the attention" of staff. (Plaintiff alleges that he did not trust Garbelman and that during conversations with Garbelman, plaintiff gave answers that he thought would result in a release from observation segregation. In other words, plaintiff now alleges that he intentionally gave untrue answers to Garbelman's questions in order to obtain a short term benefit.) Garbelman decided to continue plaintiff's observation status. Garbelman spoke with plaintiff again on September 22, 2008. Plaintiff denied suicidal or homicidal intent. Garbelman removed plaintiff from observation status.

OPINION

Prison officials have a duty under the Eighth Amendment to protect prisoners from harm, including self harm. *Minix v. Canarecci*, ___ F.3d ___, 2010 WL 668893 (7th Cir. Feb. 26, 2010) at ** 3-4; *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003). Thus, a failure to respond to threats of suicide may violate the Eighth Amendment. *Collins v. Seeman*, 462 F.3d 757, 760-61

(7th Cir. 2006); *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 926 (7th Cir. 2004); *Cavalieri*, 321 F.3d at 620; *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001); *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996). A plaintiff may establish an Eighth Amendment violation for failure to respond to suicide threats by showing that the defendant "(1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk." *Minix* at *4. Intentional disregard means that a defendant failed to take reasonable steps to prevent the inmate from performing the act. *Collins*, 462 F.3d at 761.

## I. Plaintiff's Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether plaintiff's motion for summary judgment should be granted, I must view all facts and inferences in the light most favorable to defendants, the nonmoving party. *Wisconsin Alumni Research Foundation v. Xenon Pharmaceuticals, Inc.*, 591 F.3d 876, 882 (7th Cir. 2010).

Defendants aver that plaintiff did not tell them that he was suicidal on September 19, 2008. There is no other evidence in the record to suggest that defendants were aware of plaintiff's suicidal thoughts prior to that day. If a jury were to believe defendants' version of the events, then it would conclude that defendants were not aware that plaintiff was at substantial risk of committing suicide and therefore did not violate the Eighth Amendment. Thus, plaintiff's motion for summary judgment must be denied because there are genuine factual disputes about whether plaintiff told defendants that he was suicidal.

**II.  Defendants' Motion for Summary Judgment**

In determining whether summary judgment for defendants is appropriate, I must believe all admissible evidence submitted by plaintiff, even if plaintiff's version of events seems implausible.  *Washington v. Haupert*, 481 F.3d 543, 549 (7th Cir. 2007); *see also Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.").  Plaintiff avers that he was suicidal on September 19, 2008.  Defendants argue that there is substantial evidence to suggest that plaintiff was not suicidal, including plaintiff's decision to wait until defendant Suprenand was in front of him to swallow pills, and plaintiff's subsequent admissions to psychologist Garbelman that plaintiff had not intended to kill himself by swallowing the pills.  Thus, defendants argue, they cannot be liable for violating the Eighth Amendment because plaintiff was not at a substantial risk of serious harm.

A plaintiff cannot avoid summary judgment when factual assertions essential to his claim are undermined by his previous *sworn* statements.  *See Feldman v. American Memorial Life Insurance Co.*, 196, F.3d 783, 791 (7th Cir. 1999); *see also Ineichen v. Ameritech* 410 F.3d 956, 963 (7th Cir. 2005)(a party cannot thwart the purposes of Rule 56 by creating sham issues of fact with affidavits that contradict their prior depositions).  This rule, however, is limited to contradictory *sworn* statements.  *See, e.g., Leslie v. Grupo ICA*, 198 F.3d 1152, (9th Cir. 1999)  Plaintiff's statements to Garbelman were unsworn, so at the summary judgment phase they cannot trump plaintiff's current sworn statements to the contrary.  It will be up to a jury to sort this out. Further, even if the "sham affidavit" rule were to apply, plaintiff could rebut it with a sufficient explanation of the inconsistency.  *See Butler v. Village of Round Lake Police Dept.*, 585 F.3d 1020,

1023 (7th Cir. 2009). Plaintiff avers that he lied to the psychologist at least in part so that he would be released from observation segregation. Whether this averment is credible will have to be decided by a jury because this court must take it at face value, and at face value it is sufficient to explain the lie.

Similarly, at the summary judgment phase this court is not allowed to decide whether plaintiff was genuinely suicidal or merely manipulative when he chose to swallow pills while Suprenand was watching. First, the court cannot accept as fact the defendants' implication that genuinely suicidal inmates act rationally rather than impulsively. Next, plaintiff actually swallowed the pills; defendants do not suggest that the pills did not have the potential seriously to harm plaintiff. Accepting plaintiff's version of events and drawing all reasonable inferences in favor of plaintiff would allow a jury to conclude that plaintiff was suicidal and was attempting actual self harm by swallowing several pills.

Plaintiff avers that he told defendants Keys, Kitzman and Suprenand that he was suicidal, averments that defendants deny. If a jury were to believe plaintiff's version of events, then that jury could conclude that these defendants were aware that plaintiff was at substantial risk of committing suicide, and that jury could infer that defendants Keys and Kitzman were deliberately indifferent to that risk. If a jury were to believe plaintiff's averments that he did in fact tell Keys and Kitzman that he was suicidal, and Keys and Kitzman did nothing beyond telling Suprenand that plaintiff wanted to speak with him about an unspecified problem, then that jury could infer that Keys and Kitzman failed to act in ways that could help prevent serious harm. *Farmer v. Brennan*, 511 U.S. 825, 845 (1994) ("it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.")

7

As for defendant Suprenand, even if plaintiff's version of events is true, Suprenand was not aware that plaintiff was suicidal until Suprenand went to plaintiff's cell at approximately 9:15 p.m. on September 20. Plaintiff claims that he told Suprenand that he was suicidal at this time. Suprenand responded by telling plaintiff that defendant Holm planned to talk with plaintiff in the morning. Plaintiff reacted by swallowing several pills while Suprenand watched. After plaintiff swallowed the pills, Suprenand summoned other officers immediately, entered plaintiff's cell and arranged for him to receive medical treatment. The question is whether a jury could conclude that Suprenand exhibited deliberate indifference by telling plaintiff that he would not receive help until the morning.

The case law suggests that this is a jury question. In *Collins v. Seeman*, 462 F.3d 757 the mother of an inmate who committed suicide while in custody sued the officers who had interacted wither her son before he died. The court found that one particular officer was not deliberately indifferent to the inmate's risk of suicide because: the officer had immediately notified the control room that plaintiff was feeling suicidal; immediately returned to advise the inmate that a counselor would be there "as soon as possible;" received the inmate's assurance that he would be all right until the counselor got there; returned again within 15 -20 minutes to make certain nothing was wrong; then was replaced on duty by another officer before the inmate killed himself. The court concluded that this officer's immediate, active and continuous attention to the inmate's threat of self-harm did not constitute deliberate indifference. *Id.* at 761-62. This implies that anything less than immediate, active, and continuous attention to an inmate's claim of suicidal thinking might constitute deliberate indifference. In light of this–and again, accepting plaintiff's hotly contested version of events as true–responding to an inmate

who has announced that he is suicidal by telling him that the captain will talk to him in the morning could be viewed as deliberate indifference to plaintiff's serious medical need. Therefore, Sergeant Suprenand cannot obtain summary judgment.

This leaves Captain Holm, the only defendant for whom summary judgment *is* appropriate. Plaintiff has offered no evidence from which it could be inferred that defendant Holm was alerted to the likelihood that plaintiff was at substantial risk of committing suicide. Although plaintiff contends that a reasonable jury could infer that defendant Holm had been informed of plaintiff's risk of suicide, plaintiff has provided no evidentiary basis for this contention. Defendant Holm knew that plaintiff had requested to be moved, but did not know the reason for the request. Because plaintiff did not interact directly with Captain Holm, plaintiff is not in a position to offer an affidavit that contradicts the defendants' version of what Captain Holm actually knew. Given the other defendants' versions of what the told Captain Holm, there is no basis to infer that anyone ever advised him that plaintiff had threatened self harm.

In sum, I am granting summary judgment in favor of defendant Holm but denying summary judgment in favor of defendants Keys, Kitzman and Suprenand.

ORDER

It is ORDERED that:

(1) The motion for summary judgment filed by plaintiff Derrick Howard, dkt. 18, is DENIED.

(2) The motion for summary judgment filed by defendants Captain Holm, Sergeant Jeff Suprenand, J. Keys and J. Kitzman, dkt. 27, is GRANTED with respect to defendant Holm and DENIED with respect to defendants Keys, Kitzman and Suprenand.

Entered this 1st day of March, 2010.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge